IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN TURNER, | ) | Civil Action No. 7:10-cv-00559 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DIGITAL BROADCAST | ) | |
| CORPORATION, et al., | ) | By: Samuel G. Wilson |
|     Defendants. | ) | United States District Judge |

    This is an action by plaintiff, Steven Turner, against defendants, Digital Broadcast Corporation ("Digital") and Zapmytv.com, Inc. ("Zap"), alleging breach of contract and unjust enrichment, and seeking declaratory relief and an accounting. When Turner filed this action he alleged that he was a Virginia citizen, that Digital was a Delaware corporation with its principal place of business in Delaware, that Zap was a Nevada corporation with its principal place of business in Nevada, and consequently, that there was diversity jurisdiction pursuant to 28 U.S.C. § 1332 (2006). At a hearing to determine whether the court in fact had diversity jurisdiction, Turner adduced evidence that although Digital's and Zap's officers were located in Virginia, before making a host of decisions those officers frequently consulted the New York-based chairman of Digital's and Zap's boards of directors. Consequently, Turner points to a corporate "nerve center" in New York, not in Virginia, where, at the time Turner filed his complaint, the only functioning corporate officer resided and worked. It follows, he argues, that complete diversity existed at the time of filing. The court concludes, however, that the "nerve center" test does not look to the location of the power behind the corporate decision-maker, but rather, in the absence of manipulation, to the location of the corporate decision-maker who has the legal responsibility for making high-level corporate decisions and actually makes those decisions. On

the date Turner filed this action, Digital and Zap had but one corporate officer, and that corporate officer resided, worked, and made those decisions in Virginia's Roanoke Valley. It follows that the "nerve center" and principal place of business for both corporations is in Virginia. Accordingly, because Turner and both corporations were Virginia citizens for diversity purposes on the date the suit was filed, jurisdiction is lacking and the court will dismiss the case.

I.

Turner worked in the Roanoke Valley in a variety of roles for Digital (a Delaware corporation), Zap (a Nevada corporation), and a Digital subsidiary, AirCable America, LLC (now defunct).[1] Turner entered into an employment agreement with Digital and an assignment agreement with Zap purporting to transfer intellectual property he had developed. Both agreements were executed in Virginia. Larry Silver, a resident of Virginia and an officer of both Digital and Zap, signed the Zap agreement with Turner on Zap's behalf. Eventually, Turner became the CEO and president of both Digital and Zap. A dispute soon arose concerning Turner's employment agreement with Digital and ownership of the intellectual property Turner transferred to Zap. The parties' business relationship ended, leaving Silver as the corporate officer in charge of operations for both corporations.

Turner, who is a Virginia citizen, filed his complaint in this court on December 17, 2010. Concerned that it may lack jurisdiction, on May 20, 2011, the court ordered the parties to submit evidence demonstrating that Digital and Zap had their principal places of business outside of Virginia on the date Turner filed suit. The parties gave incomplete and unsatisfactory responses, and the court continued to press the issue. Finally, on March 5, 2012, the court ordered the

---

[1] Mailbox services were used for the corporate addresses in Delaware and Nevada.

parties to show cause within ten days as to why the court should not dismiss this case for want of jurisdiction. Both sides submitted briefs, and the court held a hearing on April 18, 2012.

Digital and Zap submitted affidavits from Silver and Gary Nerlinger, the chairman of the board of directors for each corporation. According to Silver's affidavit, Silver "assumed primary responsibility for the management of Zap and [Digital] after the departure of . . . Turner as CEO," and he was exercising those responsibilities when Turner filed this action. Silver states that he conducted "business for both companies out of [his] home office" in Roanoke, Virginia and that his responsibilities included "retaining and managing legal counsel . . . , managing . . . shareholder contact, overseeing the companies' employees and consultants, and making decisions about the ongoing efforts of the companies to develop the Intellectual Property at issue in this matter." (Silver Aff. 1–2, ECF No. 106-1.) Nerlinger's affidavit states that, for health reasons, Nerlinger ceased any active involvement with Digital and Zap two or more years before Turner filed this suit. (Nerlinger Aff. 1, ECF No. 106-2.)

At the hearing, Turner and a number of former corporate employees testified about corporate decision-making and operations during their employment with one or more of the related corporations in the Roanoke Valley. Turner testified that he was hired as CEO "because of the idea that [he] had given to [Nerlinger and Silver] that would later become the product of ZapMyTV." Turner "built the system up technology-wise and talked to content owners, like HBO and Showtime, trying to get contracts" for Zap. He stated it was his "responsibility to build the technology, design it, and try to get content for it" and that the intellectual property was his creation and idea. Turner testified that he designed the "look and feel of the website." Turner also claimed that Nerlinger, who resided and worked in New York, was one of about eight board members, "controlled everything," and that Turner "could not make a decision for

3

anything without getting [Nerlinger's] approval." Turner further testified that, after he left the corporations, their operations in the Roanoke Valley were limited to "[j]ust whatever [Silver] was doing out of his office and his home for [Nerlinger]." The other former employees at the hearing testified that Turner and Silver consulted with Nerlinger before making all decisions and that Turner and Silver even consulted with Nerlinger when Nerlinger was in the hospital in New York. Turner and Turner's witnesses had no knowledge of or involvement in corporate decision-making around the time Turner filed his complaint in this action.

## II.

Turner claims there is complete diversity because the "nerve center" of both Digital and Zap followed Nerlinger, who, in reality, wielded the power and who resided in New York. The defendants claim there is not complete diversity because the "nerve center" of each corporation was here in Virginia because Silver, the only remaining corporate officer, was actively running those corporations here. As the court finds that Silver was the only corporate officer for each corporation, and that he had consistently over time directed their business affairs from the Roanoke Valley, the court concludes that each corporation's principal place of business is in Virginia. Consequently, the court dismisses this case for lack of subject matter jurisdiction.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the United States] Constitution or a statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). A federal district court has original diversity jurisdiction over civil actions when the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). "Section

4

1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)). The requisite citizenship is determined as of the date the complaint is filed, rather than some later date. Athena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999) (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)).[2] "The burden of persuasion for establishing diversity jurisdiction [rests] on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." Hertz Corp. v. Friends, 130 S. Ct. 1181, 1194 (2010) (citation omitted).

For diversity purposes, § 1332(c)(1) provides that a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. "Principal place of business" is hardly self-defining, and various federal courts formulated increasingly complex and often conflicting tests for determining it. In an effort to bring uniformity and simplicity to the statutory phrase, in Hertz, 130 S. Ct. 1181, the Supreme Court concluded that "'principal place of business' is best read as referring to the place where a corporation's *officers* direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.'" Id. at 1192 (emphasis added). According to the

---

[2] While the defendants concede that Silver moved out of Virginia shortly after the complaint was filed, a jurisdictional defect cannot be cured after the fact, even if upon dismissal the plaintiff could properly re-file immediately after dismissal. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004). The court, however, does not suggest that a corporation's principal place of business simply follows a transient corporate officer on a sojourn. As the Supreme Court noted in Hertz, "there will be hard cases." Hertz, 130 S. Ct. at 1194 ("In this era of telecommuting, for example, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet.").

5

Court, the "nerve center" will always be a "single place" within a state and "in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id. The court reasoned that simple jurisdictional rules "promote greater predictability" and that the "nerve center" test is "comparatively" simpler to apply, even though anomalies will arise. Id. at 1193–94.[3]

      With the above precepts in mind, the Court rejects on three grounds Turner's argument that the corporate "nerve center" for Digital and Zap is in New York, where Nerlinger, the chairman of both corporate boards, resided, rather than in Virginia, where Silver, Digital and Zap's controlling officer, presided over corporate affairs.

      First, in Hertz, the Supreme Court held that "'principal place of business' is best read as referring to the place where a corporation's *officers* direct, control, and coordinate the corporation's activities." Hertz, S. Ct. at 1192 (emphasis added). Nerlinger is a director. A director is not a corporate officer. See Larry D. Soderquist et al., Directors' and Officers' Liability § 2:3.1 (Practising Law Institute, 2d ed. 2011) ("[T]he typical officers are those with . . . specific operating responsibility.") Indeed, a director is not even an agent of the corporation simply by virtue of his or her position as a director. 2 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 505 (West Group, 2012) ("An individual director has no authority to take action on behalf of the corporation without the consent of the

---

[3] The Fourth Circuit has applied the Hertz "nerve center" test by looking to the location of "significant oversight and strategic decision-making," "significant corporate decision-making," and the "setting [of] policy and overseeing [of] significant corporate decisions." Central W. Va. Energy, 636 F.3d at 105.

board of directors.") Though Turner suggests otherwise, the court will not presume that the Supreme Court meant something other than what it precisely said. Here, the managing officers for both corporations had historically resided and worked in the Roanoke Valley, and on the date Turner filed suit, Silver had replaced Turner as the corporate officer in charge of operations for both corporations. Accordingly, the principal place of business for each was in Virginia, and complete diversity is lacking.

Second, even if the Supreme Court intended to embrace directors within its use of the term "officers," ultimate authority in a corporation rests with its board of directors *as a whole*, not its directors as individuals, and boards normally delegate authority to direct, control, and coordinate corporate activities to corporate officers. See 2 Fletcher, supra § 505 ("A corporation does not act through its individual directors, but rather through its board of directors as a whole.") Turner has not alleged or shown that the boards of Digital or Zap were actively directing, controlling, and coordinating corporate activities. Indeed, though he testified there were "about eight" board members, he had little knowledge of the operation of the boards or of their composition beyond Nerlinger. He simply suggests that because Nerlinger wielded power, and did so from New York, the principal place of business for both corporations is in New York.

The court concludes that Turner is conflating corporate power with corporate decision-making. Under Turner's analysis the court would look to the power broker, not the authorized decision-maker, as the "nerve center." But there are many sources of corporate power—shareholders, influential board members, and lenders, to mention only a few, and their indirect control over corporate affairs may be completely covert. In adopting the "nerve center" test the Supreme Court sought to clarify and simplify the determination of a corporation's "principal place of business" for diversity purposes. The search for a power broker's seen or unseen hand

7

Case 7:10-cv-00559-SGW-RSB   Document 115   Filed 05/24/12   Page 7 of 9   Pageid#: 1037

board of directors.") Though Turner suggests otherwise, the court will not presume that the Supreme Court meant something other than what it precisely said. Here, the managing officers for both corporations had historically resided and worked in the Roanoke Valley, and on the date Turner filed suit, Silver had replaced Turner as the corporate officer in charge of operations for both corporations. Accordingly, the principal place of business for each was in Virginia, and complete diversity is lacking.

Second, even if the Supreme Court intended to embrace directors within its use of the term "officers," ultimate authority in a corporation rests with its board of directors *as a whole*, not its directors as individuals, and boards normally delegate authority to direct, control, and coordinate corporate activities to corporate officers. See 2 Fletcher, supra § 505 ("A corporation does not act through its individual directors, but rather through its board of directors as a whole.") Turner has not alleged or shown that the boards of Digital or Zap were actively directing, controlling, and coordinating corporate activities. Indeed, though he testified there were "about eight" board members, he had little knowledge of the operation of the boards or of their composition beyond Nerlinger. He simply suggests that because Nerlinger wielded power, and did so from New York, the principal place of business for both corporations is in New York.

The court concludes that Turner is conflating corporate power with corporate decision-making. Under Turner's analysis the court would look to the power broker, not the authorized decision-maker, as the "nerve center." But there are many sources of corporate power—shareholders, influential board members, and lenders, to mention only a few, and their indirect control over corporate affairs may be completely covert. In adopting the "nerve center" test the Supreme Court sought to clarify and simplify the determination of a corporation's "principal place of business" for diversity purposes. The search for a power broker's seen or unseen hand

in the decision-making process would obfuscate, not clarify, and complicate, not simplify, the "nerve center" test the Supreme Court adopted.[4]

Third, Turner carries the burden of proving jurisdiction, and he has failed to prove that Silver, the corporations' only functioning officer, was not, as Silver's affidavit indicates, exercising control over the corporations' activities. Though Turner circumstantially demonstrated, based on his own experience, that Silver also likely consulted Nerlinger on a variety of decisions and treated his input as an unofficial veto, an unofficial veto by itself is not enough.[5] The test is to "direct, control, and coordinate." Hertz, 130 S. Ct. at 1192. Even if Nerlinger's unofficial wielding of power were considered, Silver still officially "directed" and "coordinated" corporate activities. Turner and Silver still held considerable discretion over the direction of the corporations. And they, not Nerlinger, had the legal authority to act on the corporations' behalf. Under the circumstances, Turner has failed to prove that the corporate "nerve center" for each corporation was someplace other than in Virginia.

Defendants maintain that, at the time Turner filed his complaint, Silver was essentially running both corporations, and thus the principal place of business of each was in Virginia. Turner has failed to prove otherwise. He has not met his burden of establishing that Digital and Zap were not citizens of Virginia for diversity purposes. Consequently, the court finds that

---

[4] At the hearing on jurisdiction, the court directed Turner to further address whether or not Nerlinger was also an officer of Digital and Zap in addition to being a board member. Turner instead submitted a supplemental brief arguing that the principal place of business could be found under an alternative test because Nerlinger operated as a "puppet master" and the "corporate entity was rendered a nullity."

[5] The court notes that although Turner failed to produce a single witness who could with direct knowledge testify about Nerlinger's corporate involvement at the time Turner filed his complaint, the testimony of the witnesses clearly refuted Nerlinger's assertion that he had ceased active involvement in the business in 2008.

8

Turner has failed to prove complete diversity, and absent complete diversity, this court has no jurisdiction.

### III.

For the reasons stated, the court dismisses the case for lack of subject matter jurisdiction.

**Enter**: May 24, 2012.

s/SAMUEL G. WILSON
UNITED STATES DISTRICT JUDGE
